UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  23-CV-80196-ROSENBERG

NIKASHA M. WELLS,

    Plaintiff,

v.

PALM TRAN, INC.,

    Defendant.
_____/

**ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the Defendant's Motion for Summary Judgment [DE 29].  The Motion has been fully briefed.  For the reasons set forth below, the Motion is granted and summary judgment is entered in favor of the Defendant.

This is a case about an employee's termination.  The employee—the Plaintiff—alleges that her former employer—the Defendant—terminated her because she had previously complained about unlawful pay disparities.  For its part, the Defendant contends that the Plaintiff was terminated because of poor job performance.  The facts of this case are important to the Court's ultimate ruling and, for that reason, the Court sets forth below a detailed summary of the facts.

**Facts Deemed Admitted**

Before the Court summarizes the facts, however, the Court addresses how the Plaintiff has attempted to respond to some of the Defendant's evidence.  Many of the Plaintiff's responses are deficient and, as a result, many of the Defendant's facts in support of summary judgment are deemed admitted by the Plaintiff.  By way of example, the Defendant proffered this fact:

> 7. Plaintiff was responsible for submitting the quadrennial EEO Program report to the FTA that was originally due on March 1, 2020.

DE 30 at 2.  The Plaintiff's response reads as follows:

> 7. <u>Partially disputed</u>.  Plaintiff was not solely responsible for submitting the EEO Program report to the FTA and Plaintiff's [sic] testified that "it was the responsibility of the consultant to prepare the report. They got information from me. I provided that information in as timely as fashion as I could."

DE 36 at 2.  But the Defendant's proffered fact was not that the Plaintiff was *solely* responsible—it was that the Plaintiff was responsible.  The Plaintiff effectively admitted this fact in her response, but in any event the Plaintiff did not refute the fact with an evidentiary citation.  The Defendant's fact is therefore deemed admitted by the Plaintiff pursuant to Local Rule 56.1(c).  Another example:

> 8. Plaintiff missed the deadline to submit the report and requested extensions from the FTA.

DE 30 at 2.  In response, the Plaintiff provided the following:

> 8. <u>Partially disputed</u>. To the extent the Defendant implies that Plaintiff missed the deadline and then requested extensions is disputed. To the extent that extensions were provided and, thereby the original deadline was extended, is undisputed.

DE 36 at 2.  But the Defendant did not *imply* that the Plaintiff missed the deadline—the Defendant *stated* that the Plaintiff missed the deadline.  The Defendant supported its assertion with an adequate citation to record evidence:

> Q: And as the EEO officer, you were responsible for the submission of the quad-annual EEO program report to the FTA?
>
> A: [The Plaintiff] Yes.
>
> . . .
>
> Q: You asked for extensions from the FTA to submit the report?
>
> A: That is correct.
>
> . . .

2

> Q: So once you met with her, what happened as -- in regards to submitting what needed to be submitted to the FTA?
>
> A: Again, it's forwarded to a consultant. March 1st comes along. The week before I'm e-mailing. I'm calling. I'm getting nervous palms, and I notify my supervisor and my director. I don't have the EEO submittal. So we missed the deadline. We didn't submit that Friday because the 1st was on a Sunday, and then the next week, the same thing. We're talking, and know again there was an issue with some records that she was requesting from HR, which is again some of the stuff from human resources. I asked again. Did we request an extension? Yes, we requested an extension.
>
> Q: Ultimately, was the submission of the FTA reporting done on time?
>
> A: No. We didn't submit it on time.

DE 30-2 at 67, 68, 190.  It is irrelevant to the Defendant's stated fact whether other persons were involved in the events described above; what the Defendant's evidence supports is that: (i) the Plaintiff was responsible for a deadline and (ii) the deadline was not met.  The Plaintiff has not refuted this fact with evidence and the fact is deemed admitted pursuant to Local Rule 56.1(c).

Local Rule 56.1(b)(2) only permits a respondent to state that a fact is "admitted" or "disputed," the rule does not permit a respondent to state that a fact is "partially disputed."  The Plaintiff's usage of the phrase "partially disputed" is accompanied with what is effectively legal argument on how the Court should view or analyze the Defendant's record evidence—that is not the purpose of a response to a statement of material facts.  The Plaintiff's deficient responses to the Defendant's statement of facts are frequent enough that for the Court to analyze each instance would be tedious.  Instead, below, the Court sets forth the facts in this case, and each fact that the Plaintiff has not expressly admitted is deemed admitted by the Court.

**Facts in Support of the Defendant's Motion for Summary Judgment**

The Plaintiff worked for the Defendant as a senior manager of government affairs. DE 30 at 1. The Defendant is a public transit organization that receives federal funding. *Id.* To receive that funding, however, the Defendant must have a federally-compliant equal employment opportunity program. *Id.* As part of her duties, the Plaintiff was responsible for submitting the necessary equal opportunity program reports to the federal government to ensure that the Defendant received federal funding. *Id.*

In the spring of 2020, the federal government did not receive the reports it needed to provide the Defendant with funding. *Id.* at 2. The Plaintiff was responsible for the timely submission of those reports. *Id.* When the Defendant received a response from the federal government on its submission (which was transmitted after the initial deadline), the response outlined a number of deficiencies in the Defendant's report. *Id.* After receiving notification of the deficiencies, the Plaintiff took a medical leave of absence from her employment. *Id.* at 3. At the time the Plaintiff went on leave, the Defendant's receipt of federal funding was in jeopardy. *Id.*

While the Plaintiff was out on leave, the employee selected to oversee the Plaintiff's former responsibilities became aware of the deficiencies in the federal report. *Id.* That employee brought the reporting deficiencies to the attention of the Defendant's executive director, Mr. Clinton Forbes, in July of 2020. *Id.* At that time, Mr. Forbes contemplated terminating the Plaintiff,[1] but he ultimately decided to instead initiate a performance review of the Plaintiff when she returned to work. *Id.* at 4. That performance review was given to the Plaintiff on the day she returned to work, in December of 2020. *Id.* After meeting with the Plaintiff to discuss the

---

1 Although the Plaintiff states that this fact is "partially disputed," the Plaintiff's evidentiary citation does not refute what Mr. Forbes was thinking in July of 2020.

4

performance review, Mr. Forbes informed the Plaintiff that there would be regular follow-up meetings to discuss her performance. *Id.*

Shortly after the Plaintiff's initial performance review, Mr. Forbes provided the Plaintiff with a second performance review. *Id.* at 494.  In that review, Mr. Forbes informed the Plaintiff that she had worn a partisan political facemask to work, in violation of the Defendant's policies. *Id.*

A few weeks later, the Plaintiff investigated a potential disciplinary action against an employee. DE 30-4 at 83.  The Plaintiff reached one conclusion about the appropriate disciplinary response, and other employees involved in the investigation reached a different conclusion. *Id.* at 83-84.  After the Defendant reviewed the Plaintiff's investigation and conclusions, the Defendant concluded that the Plaintiff had made errors. DE 30-2 at 522.  Very soon thereafter, the Defendant terminated the Plaintiff's employment. DE 30 at 1.

The Court has yet to summarize the Plaintiff's allegations of discrimination.  It does so now.

After the Plaintiff received notification that the Defendant's federal funding was in jeopardy, and after the Plaintiff took leave, the Plaintiff authored an e-mail to Mr. Forbes. DE 30-2 at 609-10.  In that e-mail, the Plaintiff complained that her picture had been removed from the Defendant's website. *Id.*  She also complained that her request to work from home (which predated her leave and pertained to the covid-19 pandemic) had been denied. *Id.*  As a result, she accused Mr. Forbes of "embarrassment, harassment, intimidation, and retaliation." *Id.*

After the Plaintiff's initial performance review in December of 2020, the Plaintiff sent another e-mail to Mr. Forbes. *Id.* at 612-13.  In that e-mail, entitled "Formal Complaint," the

5

Plaintiff accused Mr. Forbes of harassment, embarrassment, retaliation, and a hostile work environment in connection with her earlier use of leave and with the treatment she received upon returning to work. *Id.*

After the Plaintiff's second performance review (which focused on the Plaintiff's partisan political activity), on January 4, 2021, the Plaintiff filed a formal complaint of discrimination and harassment. *Id.* at 619. In that complaint, the Plaintiff accused Mr. Forbes of discrimination and retaliation because of an alleged denial of her remote work request and the way she was treated, by Mr. Forbes and the Defendant, after that request. *Id.*

Within hours of the Plaintiff being informed, in January of 2021, that the Defendant disagreed with her handling of an investigation, the Plaintiff authored another e-mail. *Id.* at 624. In that e-mail the Plaintiff accused the Defendant of violating the federal Equal Pay Act. *Id.* The Plaintiff wanted to be paid more money. *Id.* at 625 ("I believe that this matter can be resolved by increasing my salary."). Shortly thereafter, the Defendant terminated the Plaintiff. DE 30 at 8.

After the Plaintiff's termination, the Plaintiff litigated in the Fifteenth Judicial Circuit, in and for Palm Beach County. *Wells v. Palm Tran, Inc.*, No. 2021-CA-009443 (Aug. 12, 2021). The Plaintiff alleged that the Defendant violated the Emergency Family and Medical Leave Act, Title VII of the Civil Rights Act, and the Equal Pay Act. *Id.* at DE 12, page 2. The Plaintiff alleged that her termination was a result of her complaints about those violations, and she moved on an emergency basis to be reinstated to her position.

After a lengthy evidentiary hearing,[2] the state court found that the Defendant initiated a personnel action against the Plaintiff long before she began to complain of illegal activity. *Id.* at DE 78, page 5. More specifically, the state court found that the Defendant initiated a personnel

---

2 Most of the evidence cited by the parties is from the state court evidentiary record.

action against the Plaintiff in the summer of 2020 when "the interim EEO Officer brought the FTA report of deficiencies" to Mr. Forbes' attention. *Id.* The court further stated that the "Plaintiff was terminated from her position on February 5, 2021, due to her performance deficiencies," and that those deficiencies included "[the Plaintiff] fail[ing] to make any progress with EEO Program compliance, violat[ing] County policy as to political activity in the workplace, and mishandle[ing] an internal EEO investigation." *Id.* As a result of its findings, the state court denied the Plaintiff's emergency motion for reinstatement. *Id.* Soon thereafter, the Defendant filed a motion for summary judgment, followed by the Plaintiff filing a notice of voluntary dismissal. One day after her dismissal, the Plaintiff filed this federal lawsuit.

In this suit, the Plaintiff no longer alleges that she was terminated because of discrimination stemming from her use of her leave, her familial status, or her need to work remotely during the covid-19 pandemic. Instead, the Plaintiff alleges that her termination was in retaliation for her complaint about pay disparity under the Equal Pay Act.

## **Analysis and Ruling**

To establish a prima facie case of retaliation under the Equal Pay Act, the Plaintiff must have evidence (1) that she engaged in statutorily protected expression, (2) that she suffered an adverse employment action, and (3) the adverse employment action was causally connected to her protected expression. *See Crawford v. Carroll*, 529 F.3d 961, 970-74 (11th Cir. 2008); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). Here, the Defendant argues that it is entitled to summary judgment for three reasons: the Plaintiff has insufficient evidence for the first element (statutorily protected expression), the Plaintiff has insufficient evidence for the third element (causation), and, even if the Plaintiff does have sufficient evidence for a *prima facia*

7

showing on the first and third elements, the Defendant had a lawful reason to terminate the Plaintiff and she has not rebutted that reason.[3]

In response, the Plaintiff relies upon the e-mails that she authored shortly before her termination, wherein she contended that the Defendant violated the Equal Pay Act by paying women less than men. DE 35 at 7. The Plaintiff's reliance upon those e-mails necessarily requires that she had both an objective and subjective good faith belief that the Defendant was in violation of the Equal Pay Act:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable **in light of the record presented**. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations **and record** must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little v. United Techs.*, 103 F.3d 956, 960 (11th Cir. 1997) (emphasis added). Because the summary judgment standard is that of a reasonable juror, the Defendant argues that no reasonable juror could believe that the Plaintiff had an objective or subjective good faith belief that the Defendant was in violation of the Equal Pay Act. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). For three evidentiary reasons, the Court agrees.

First, the Plaintiff was a senior manager, but the Plaintiff's own e-mails, accepted as true, state that the most highly paid senior manager was a woman, not a man. DE 1 at 12-13. Second, even though the Plaintiff previously had access to salary information as part of her job, and even though the Plaintiff's duties included preparing reports on pay disparity, the Plaintiff never raised the subject in the past and waited until a few hours after receipt of a January 2021 e-mail that

---

3 The *McDonnell Douglas* burden-shifting framework applies to claims under the Equal Pay Act. *See EEOC v. Reichhold Chems, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993).

8

criticized her job performance to broach the subject. DE 30-3 at 80-81. Third and most importantly, no reasonable juror could view the record evidence and conclude that the Plaintiff did not know that her job was in peril at the time of her e-mails on pay disparity.

In her Response to the Defendant's Motion, the Plaintiff contends that, when she authored her e-mails, she did not even have a "hint" that her job was at risk. DE 35 at 8. This Court, just like the Florida state court in the Plaintiff's prior suit, does not agree. The Plaintiff's job was at risk at least as early as the summer of 2020, it became more so with time, and the Plaintiff knew; a reasonable juror could not conclude otherwise. In the Plaintiff's own words, from August of 2020:

> I absolutely must address to clarify the record . . . . you have placed all of these restrictions . . . and basically stated that I will be fired if I do not return on December 14, 2020. . . . **Your memo is merely a pretextual cover for my eventual termination.**

DE 30-3 at 609-10 (emphasis added). The Eleventh Circuit has made clear that anti-retaliation provisions "do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1270 (2010). Just so here.

For the reasons above, the Court is persuaded that the Plaintiff does not have sufficient evidence that she, in good faith, engaged in statutorily-protected expression and that her expression caused her termination. Relatedly, the Court is persuaded that the Plaintiff does not have sufficient evidence to rebut the Defendant's lawful basis for termination. *See Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (stating that a plaintiff's burden is to "meet [the proffered] reason head on and rebut it"). For all of the reasons set forth in this Order and the Defendant's Motion and Reply, which the Court adopts and incorporates herein as a basis for its decision, the Defendant's Motion for Summary Judgment shall be granted.

It is therefore **ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment [DE 29] is **GRANTED** and the Clerk of the Court shall **CLOSE THIS CASE** and deny all other pending motions **AS MOOT**. The Defendant shall submit a proposed final judgment in Microsoft Word format to rosenberg@flsd.uscourts.gov within three days of the date of rendition of this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 22nd day of February, 2024.

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record